IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 15, 2014 Session

## STATE OF TENNESSEE v. RONALD BERNARD ANDERSON, II

**Appeal from the Criminal Court for Davidson County**
**No. 2009A604     Cheryl A. Blackburn, Judge**

_____

**No. M2013-01326-CCA-R3-CD - Filed May 22, 2014**

_____

Following a jury trial Defendant, Ronald Bernard Anderson, II, was found guilty as charged of four counts of the Class C felony offense of sexual battery by an authority figure. The trial court imposed a sentence of thee years for each conviction. A combination of concurrent and consecutive sentencing resulted in an effective sentence of six years. As to the manner of service of the sentences, the trial court ordered split confinement: three months incarceration and the balance of the six-year sentence suspended, with supervised probation for twelve years. In this appeal Defendant presents two issues for review. He claims the trial court erred by granting the State's motion to amend each of the four counts of the indictment over Defendant's objection because the indictment was defective, and he asserts the evidence was legally insufficient to support the convictions. After review of the entire record and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jason Gichner, Nashville, Tennessee, for the appellant, Ronald Bernard Anderson, II.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**Amendment of Indictment/Defective Indictment**

Each of the four counts of the indictment involved the same victim. To protect his privacy, we will refer to the victim as "the victim," or by the letters "AZ," which are *not* the victim's initials. As originally charged in the indictment, each count alleged that its offense occurred "on a date between January 1, 2005 and December 31, 2005." On February 3, 2012, the State filed a motion to amend the indictment. The motion was filed almost a year prior to the trial which commenced January 28, 2013. On May 16, 2012, the trial court heard arguments and granted the State's motion to amend each count of the indictment to allege that its offense occurred "on a date between January 1, 2006 and August 18, 2007."

Rule 7 of the Tennessee Rules of Criminal Procedure governs the amendment of an indictment. As pertinent here the rule specifies:

> (b)  AMENDING INDICTMENTS, PRESENTMENTS AND INFORMATIONS. –
>
> * * *
>
> (2)  WITHOUT DEFENDANT'S CONSENT. – Without the defendant's consent and before jeopardy attaches, the court may permit such an amendment if no additional or different offense is charged and no substantial right of the defendant is prejudiced.

Tenn. R. Crim. P. 7(b)

At the hearing on the motion to amend the indictment, the State submitted that after the return of the indictment it discovered during trial preparation that the offenses occurred in the range of January 2006 through mid-August 2007, rather than in 2005. Defendant's trial counsel, who does not represent Defendant on appeal, argued that the change of the dates of the alleged offense from one year to the next "year and a half, that's like a whole new game." Defendant's suggested remedy was for the State to go back to the Davidson County Grand Jury and seek a superseding indictment alleging the correct dates. Other than generally alluding to the fact that Defendant had prepared for trial on the basis of the dates alleged in the indictment, Defendant's trial counsel did not specify any particular prejudice that would occur to him upon amendment of the indictment. For instance, counts five through twelve of the indictment, involving the same offense with a different victim, had already been dismissed upon motion of Defendant based upon the applicable statute of

limitations.  The statute of limitations was not an issue in the counts involving AZ.  Also, Defendant never relied on an alibi defense.

After Defendant's argument and questions by the trial court, the State provided further explanation of the reason for the amendment.  At the time of the offenses Defendant was an elder and musician in the Royal Life International Church.  AZ had consistently stated that the offenses occurred during a time period when the church met at the Metro Center in Nashville.  The State discovered during trial preparation that the church did not begin meeting in the Metro Center until January 2006, rather than in 2005.  Upon granting the motion to amend the indictment, the trial court also ordered the State to amend the bill of particulars it had previously filed in order to conform to the accurate year.

In his motion for new trial, Defendant expanded his argument concerning error by the trial court when it granted the State's motion to amend the indictment.  The motion for new trial states on this issue,

> 1.  That the trial court erred in allowing the State of Tennessee to amend the indictment.  The State in its original indictment alleged activity that occurred in the year of 2005.  That with no additional evidence and once facts were told to the State that it was not possible to have occurred in 2005 the State moved to amend the indictment.  After hearing the court allowed the indictment to be amended.  The fact the statutory language changes along with the jury charge from 2005-2007 was a substantial change to the law and the case should have been presented to the grand jury for indictment;

At the hearing on the motion for new trial, Defendant's counsel clarified his argument regarding the amendment of the indictment.  Each count of the indictment, both before and after the amendment, alleged as an essential element of the charged offense that Defendant "was in a position of trust over" AZ and that Defendant "used such position of trust to accomplish the sexual contact."  The statutory language which added the provision that the offense of sexual battery by an authority figure could be established by a defendant being in a position of trust and by using the position of trust to accomplish sexual contact, was enacted effective July 1, 2005.  2005 Tenn. Pub. Acts Ch. 478 § 1.  Defendant argued that the exact dates of the four offenses were never alleged or proven.  Accordingly, under the original indictment, if the offenses occurred during the first half of the time period alleged therein (January 1, 2005 through June 30, 2005) proof of the crime of sexual battery by an authority figured based *solely* upon Defendant being in a "position of trust" was not possible. That is, according to Defendant, he had an absolute defense to the charge of sexual battery by an authority figure *if* the offenses occurred between January 1, 2005 and June 30, 2005.

-3-

Defendant argued that it was possible that proof had been presented to the Grand Jury that the offenses occurred prior to July 1, 2005, during a time period when the indicted offenses were not criminal acts. Defendant asserted that his rights had been violated by not having "a proper case" being presented to the Grand Jury.

For the first time, Defendant argues on appeal that the original indictment was defective. Specifically, Defendant argues in his brief that,

> The only indictment ever reviewed by a Grand Jury in this case was defective. It contained the wrong elements for the charged offenses. This plain error requires reversal of the convictions and dismissal of the case. All subsequent proceedings in this case were void. In addition, the trial court erred by allowing the State to amend the defective indictment over the objection of the defense.

Defendant argues in his brief that this court should review the issue of a defective indictment pursuant to the plain error doctrine, supposedly since this issue was first raised on appeal. *See* Tenn. Rule App. P. 36(b). However since Defendant argues that the indictment is so defective that the trial court was without jurisdiction to decide the case and the indictment fails to charge a criminal offense, it is not necessary to analyze the issue under the "plain error" doctrine. *See* Tenn. Rule Crim. P. 12(b)(2)(B).

Defendant relies upon the unpublished case of *State v. Cleander Cleon Hartman, Jr.*, No. M2000-02441-CCA-R3-CD, 2002 WL 65996 (Tenn. Crim. App. Jan. 17, 2002) in support of his argument that the indictment in his case was void at the time it was returned by the Grand Jury. We disagree. In *Cleander Cleon Hartman, Jr.*, the defendant appealed his convictions for sexual battery in Count 1, sexual battery by an authority figure in Count 2, and aggravated sexual battery in Count 3. The Defendant was the step-father of the victim in Count 2, which led to the conviction for sexual battery by an authority figure. The statute proscribing the offense of sexual battery by an authority figure was enacted in 1997. *Cleander Cleon Hartman, Jr.*, 2002 WL 65996 at *5. However, it was not until May 18, 1998, that the statute was amended to include a position of authority being a step-parent. *Id*. at *5-6. The problem for the State in *Cleander Cleon Hartman, Jr.* was that the indictment alleged a violation of the statute as it was worded *prior* to the amendment effective May 18, 1998. The indictment alleged under the older version that the defendant was an authority figure because of his "legal, professional or occupational status." There was no allegation in the indictment that the defendant was an authority figure because he was a step-father exercising "parental or custodial authority" over the victim. The State's sole theory at trial that the defendant was an authority figure was that he was the victim's step-father. However,

-4-

this essential element was not alleged in the indictment. The court in *Cleander Cleon Hartman, Jr.* held,

> We conclude that the indictment and jury charge for the crime of sexual battery by an authority figure in Count Two was improperly applied to this defendant. The defendant could not be charged with conduct, which occurred prior to the amendment of the statute on May 18, 1998, because stepparents were not included in the original version of the statute. Furthermore, the language used in the instant indictment could not be applied to the defendant for conduct which occurred even after May 18, 1998, because the defendant did not have "legal, professional, or occupational" authority over the victim as stated in the indictment and jury charge. Therefore the conviction on Count Two, sexual battery by an authority figure must be reversed and dismissed.

*Id*. at *6.

Defendant hinges his argument in this issue upon the assertion that the original indictment was defective and void on its face. His argument is that because the offense of sexual battery by an authority figure via the means of a "position of trust" was not a crime until July 1, 2005, Defendant's indictment charged him with committing an offense that was not a crime during the first half of the time period initially alleged in the indictment. The indictment was returned by the grand Jury on March 6, 2009. As stated above, each count alleged that "on a date between January 1, 2005 and December 31, 2005" Defendant committed the offense of sexual battery by an authority figure via use of a "position of trust." Defendant does not acknowledge that for one-half of the time period alleged in the indictment, sexual battery by an authority figure via a "position of trust" was an existing crime. The indictment was not void. As our supreme court has held,

> Generally stated, an indictment is valid if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy.

*State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997).

In the case *sub judice* the original indictment met these criteria, even though theoretically if the State had proceeded to trial without an amendment, and obtained a conviction of Defendant as charged for conduct committed between January 1, 2005 and June 30, 2005, Defendant likely would be entitled to the same relief accorded the defendant

in *Cleander Cleon Hartman, Jr.* However, Defendant's case is not a situation where the Grand Jury was presented with facts that Defendant committed some acts of sexual battery by an authority figure that definitely occurred prior to July 1, 2005 (the effective date of the amendment). The State moved to amend the indictment to set forth a time range *after* the effective date of the statutory amendment, and the State **did not** prove a set of criminal acts which occurred prior to the effective date of the amended statute. It is clear from the record that the petit jury found Defendant guilty of the same four criminal acts of sexual battery by an authority figure for which he has been indicted by the Grand Jury.

Generally, the date of an alleged offense does not have to be specifically stated in a valid indictment. Our supreme court has held,

> The rule of law is well-established in Tennessee that the exact date, or even the year, of an offense need not be stated in an indictment or presentment unless the date or time "is a material ingredient in the offense." T.C.A. § 40-13-207; *State v. Shaw*, 113 Tenn. 536, 537-38, 82 S.W. 480 (1904); *State v. West*, 737 S.W.2d 790, 792-93 (Tenn. Crim. App. 1987). *In fact in order to establish the legal sufficiency of that charging instrument, the state need allege only that the offense was committed prior to the finding of the indictment or presentment. Id.*

*State v. Byrd*, 820 S.W.2d 739, 740 (Tenn. 1991). (emphasis added).

In *West*, cited above, the court quoted from *Shaw* and stated,

> The rule is that the offense must be proved to have been committed prior to the finding of the indictment and within the time specified by any applicable statute of limitations; and, except where a special date is essential or time is of the essence of the offense, the time of the commission of the offense averred in the indictment is not material and proof is not confined to the time charged. *Prince v. State*, 529 S.W.2d 729 (Tenn. Crim. App. 1975) and cases cited therein.

> This rule is explained in *State v. Shaw*, 113 Tenn. 536, 82 S.W. 480 (1904) thusly:

>> "The rule to be deduced from our cases is that, where there is no statute of limitations barring the offense, it is unnecessary to state the day, or even the year, but it is sufficient to aver generally that the offense was committed before the finding

of the indictment; that it is not necessary to state in any case the day on which the offense was committed, unless the day itself is of the essence of the offense, as of offenses committed against laws passed for the preservation of the Sabbath, or unless the time is important to bring the offense within the operation of new or amended statutes or the like; . . . ."

*West*, 737 S.W.2d 790, 792 (Tenn. Crim. App. 1987).

The last contingency mentioned in *Shaw*, whether "the time is important to bring the offense within the operation of new or amended statutes or the like," applies in this case. However, it is clear that in the alleged range of time of commission of each offense, the amended statute was applicable for one-half of the time range originally alleged. Therefore, the indictment was not defective.

In *State v. Kennedy*, 10 S.W.3d 280 (Tenn. Crim. App. 1999), the defendant was charged with statutory rape in an indictment that alleged the offense occurred "on the ____ day of January, 1996." Subsequently, the State moved to amend the indictment by changing "on the ___ day of January, 1996" to "after May 1st, 1995." The change was necessary in order to correlate with the date of conception of the victim's child as a result of the defendant's act of statutory rape. This court held,

Thus, a defendant is not charged with a new crime when the date in the indictment is merely corrected in order for the original charge to stand. In the present case, the sole change the state requests is to the date in the indictment and, therefore, the proposed amendment alleges no additional offense.

The defendant contends that the proposed amendment interferes with his right to be indicted by a grand jury under Article I, section 14 of the Tennessee Constitution because no grand jury has ever considered whether enough proof exists to indict him for the conception of the victim's child. However, because an amendment to correct an immaterial date in the indictment does not allege a new crime, Article I, section 14 concerns are not implicated.

*Kennedy*, 10 S.W.3d at 284.

Under *West, Shaw*, and *Kennedy*, Defendant is not entitled to relief on this issue.

**Sufficiency of the Evidence**

In his challenge to the sufficiency of the evidence to support all of the convictions, Defendant's sole argument is that the State failed to prove beyond a reasonable doubt that Defendant held a position of trust or used a position of trust to accomplish the acts of sexual battery. In light of the narrow issue presented by Defendant we will set forth a summary of only the testimony regarding the position of trust element.

The victim was born in August of 1989. In the early part of 2006, when the victim was a sophomore in high school, a friend invited him to attend the Royal Life International Church. The victim began attending church services there on a regular basis. Defendant was an elder in the Royal Life International Church and also served the church as musician and as a mentor for young men. The victim and Defendant developed a close relationship, but the sexual relationship did not begin until the victim's junior year of high school. Regarding the development of a close friendship and relationship, the victim said that he found Defendant an easy person with whom to talk. The victim had been sexually abused by a close relative when the victim was very young. He discussed this with Defendant. According to the victim, Defendant convinced the victim that this tragic event was not the victim's fault. The victim stated that he relied on Defendant as a confidant and had much trust in Defendant. The victim testified that he attended a mentor session with Defendant, went to eat with Defendant, and went to movies and other outings with Defendant.

On the first occasion that the relationship became "intimate," the victim and Defendant were attending a "three part" service at the church. During a break between sessions, Defendant asked the victim to help move some items inside the administrative building located away from the church sessions. The victim complied with the request. While the two were alone, Defendant asked the victim to massage Defendant's arm and shoulders. Defendant took off his shirt and laid down on his stomach. He asked the victim to apply more pressure and the victim sat on top of Defendant's back. Defendant later pulled down his pants and he was wearing no underwear. At Defendant's request, the victim massaged Defendant's buttocks. The following testimony of the victim is relevant:

[PROSECUTOR]:    And how did that make you feel when he asked you on this particular occasion?

[THE VICTIM]:    It was slightly uncomfortable. But like I said, I have a hard time with people that are older than me, especially when I want them to stay in my life. And it's kind of like, okay, well, I'm a little uncomfortable, but this is what I want - - I don't want to lose this

-8-

person. So I'll do what's necessary to keep this person.

The next two instances of intimate contact also occurred at the administrative building of the church. From the State's election of offenses for each of the four counts, Defendant was convicted of the following offenses: Count 1, Defendant performed oral sex on the victim in a bathroom at the church; Count 2, the victim performed oral sex on Defendant in a bathroom at the church; Count 3, Defendant masturbated the victim's penis in a bedroom at Defendant's house; and Count 4, the victim masturbated Defendant's penis in a bedroom at Defendant's house. The offenses described in Counts 3 and 4 occurred on a Saturday. Defendant had picked up the victim for each of them to attend a mentoring program for minority students at one of the colleges in Davidson County, and they ended up at Defendant's home.

The victim explained why he did not report Defendant's sexual conduct by testifying,

Because when people come in my life, they tend to only stay for a little while. And although I did know what we were doing wasn't exactly kosher, he was someone that I trusted and loved. And I didn't want to lose that person or anyone of that nature.

At some point after the victim turned eighteen years old, he began to feel guilty about his sexual conduct with Defendant because the victim was very close to Defendant's wife and children and the victim felt he was betraying them. The victim told Defendant that their sexual relationship had to stop, and it did.

Shara Walker, a member of the Royal Life International Church for approximately three years, ending in 2008 or 2009, was in charge of the youth choir and was a youth department teacher. The victim eventually told her that he had had a sexual relationship with Defendant. She told the victim to tell the youth pastor. Eventually the victim informed the head minister about the relationship. When the church leaders failed to inform law enforcement after six months, Ms. Walker notified the police and other authorities. She testified that Defendant was a leader in the church and that his mentoring of young men was "one-on-one."

Michael Rich was the pastor of Royal Life International Church at the time of the sexual relationship between Defendant and the victim. He and his wife founded the church. Mr. Rich testified that Defendant was a leader in the church, including being an elder of the ministry and a musician. Mr. Rich acknowledged that Defendant was entrusted to be a

mentor to some of the young people of the church, in particular the young men. Defendant was responsible to oversee "the flock of the ministry."

In his brief on appeal, Defendant argues as to the "position of trust" issue that the State proved only that he was an elder in the church attended by the victim, Defendant and the victim became friends, and a consensual sexual relationship thereafter developed. Defendant asserts that the State failed to prove that Defendant formally or informally "stood in a relationship to the victim that promoted confidence, reliability, or faith." *See State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996). The State disagrees.

Our review of a defendant's challenge to the sufficiency of the evidence to sustain a conviction is governed by well settled principles of law. Our standard of review regarding sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Id*. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. *State v. Dorantes*, 331 S .W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In *Dorantes*, our supreme court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *Id*. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. *Id*.

As acknowledged by Defendant, *Kissinger* sets forth the appropriate factors to determine whether a defendant has established a relationship with the victim from a "position of trust." Specifically, Defendant states in his brief,

> the Court [in *Kissinger*] explained that while the length or formality of the
> relationship can be indicative of a "position of trust," the more important
> inquiry is into the nature of the relationship: the question should ultimately

be whether the defendant formally or informally "stood in a relationship to the victim that promoted confidence, reliability, or faith."

The victim testified that he developed a close friendship with Defendant when the victim began attending the church during his sophomore year in high school. Defendant was a mentor to young men, he did the mentoring "one on one," and he became a mentor to the victim. The victim confided in Defendant about the victim being sexually abused at a young age by a close relative. The victim specifically testified that he relied on Defendant as a confidant and that he had much trust in Defendant.

Defendant's initial intimate conduct with the victim was when they were alone inside the church's administrative building because Defendant asked the victim to help Defendant move some items during a break in church services. The victim testified that although this intimate contact made him uncomfortable, he wanted Defendant to stay in his life, and he would do anything to keep Defendant in his life. The victim also testified that after more intimate sexual conduct developed in his relationship with Defendant, and the victim knew the conduct was not exactly appropriate, he did not want to "lose" Defendant, because Defendant was someone the victim "trusted and loved."

The elements of the crime for which Defendant was convicted are set forth in Tennessee Code Annotated section 39-13-527(a)(1)and(3)A:

(a)     Sexual battery by an authority figure is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by the following circumstances:

(1)     The victim was, at the time of the offense, thirteen (13) years of age or older but less than eighteen (18) years of age;

. . . and,

3(A)   The defendant was at the time of the offense in a position of trust, or had supervisory or disciplinary power over the victim by virtue of the defendant's legal, professional or occupational status and used the position of trust or power to accomplish the sexual contact;

-11-

The facts in this case, taken in the light most favorable to the State, clearly show that at the time of the offenses Defendant was in a position of trust with the victim, and used the position of trust to accomplish the sexual contact. Any rational trier of fact could find Defendant guilty beyond a reasonable doubt. Defendant is not entitled to relief on this issue.

In conclusion, we affirm the judgments of the trial court.


        _____

        THOMAS T. WOODALL, JUDGE